UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VERONICA ACEVEDO,                              :
                                               :
                    Plaintiff,                 :
                                               :          **OPINION**
       -against-                               :          21-CV-10621 (KHP)
                                               :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                    Defendant.                 :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____2/1/2023____

**KATHARINE H. PARKER, United States Magistrate Judge**.

       Plaintiff Veronica Acevedo, represented by counsel, commenced this action against

Defendant, Commissioner of the Social Security Administration ("SSA"), pursuant to the Social

Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of Defendant's decision that

she was not disabled as of January 1, 2019, the date of her application, through the date of the

decision, March 31, 2021, and accordingly was not eligible for Supplemental Security Income

("SSI") during that period.  Plaintiff and Defendant both moved for judgment on the pleadings.

(ECF No. 22 ("Joint Stipulation").)

       For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS

Defendant's motion, and remands the case for further proceedings.

## BACKGROUND

       Plaintiff was born in 1978 and has a high school education through the tenth grade.

(A.R. 188.)  She suffers from depressive disorder, anxiety disorder, and post-traumatic stress

disorder ("PTSD").  She has not worked since at least 1998 and focused her time on raising her

children.  On January 1, 2019, Plaintiff applied for SSI benefits in light of mental health

disorders.  (*Id.* at 56, 69, 163-169.)  Defendant denied Plaintiff's claim initially (A.R. 70-75) and

after reconsideration (*Id*. at 82-87).  Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ").  After a hearing before ALJ Angela Banks, ALJ Banks denied the claim.  (*Id.* at 15.)

    **1. Relevant medical evidence**

        a. <u>Montefiore Medical Center</u>

The Plaintiff started receiving psychiatric services from Montefiore Medical Center

("Montefiore") in 2019.  (A.R. 297.)  During the period between applying for SSI benefits in

January 2019 and the Plaintiff's hearing in March 2021, Plaintiff regularly visited Montefiore for

treatment with psychologist Katrina McCoy, Ph.D., psychiatrist Galina Bass, M.D., and later,

psychiatrist Natalya Knafel, M.D.  Plaintiff's prescribed medications during this period included

Prozac (generally prescribed to treat depression and obsessive compulsive disorder) and

Trazodone (generally prescribed to treat depressive disorder).  (*Id*. at 306; Joint Stipulation at

4.)

From June 2019 to March 2021, in their mental status exams, Dr. McCoy, Dr. Bass, and

Dr. Knafel generally found that Plaintiff had appropriate grooming, was cooperative, had

appropriate behavior, normal speech, logical and goal directed thoughts, was alert, had an

intact memory, and intact concentration.  (A.R. 300, 305, 310, 325-26, 339, 343-44, 360, 493,

513, 523, 579.)  However, they also found that Plaintiff was anxious with a congruent to

constricted affect and fair insight, fair judgment, and fair impulse control.  (*Id.*)

On June 11, 2019, Plaintiff first visited Dr. McCoy and described her symptoms as poor

sleep, a sad and angry mood, fatigue, difficulty concentrating, intrusive memories of the past,

and paranoia around large groups of people.  (*Id.* at 297.)  She also stated that she had a history

of alcohol abuse and that she was experiencing episodic increases in anxiety over the last three

to four years but has not had psychological treatment in the past.  (*Id.*)  Dr. McCoy found that

Plaintiff had no plan or suicidal ideation and no homicidal intent.  (*Id.* at 300.)  The Plaintiff also

answered questions as part of a Patient Health Questionnaire ("PHQ-9") that measures the

severity of depression.  Plaintiff was given a total score of 17, which indicated "moderate

severe" depression.  (*Id.* at 301.)  Dr. McCoy recommended the Plaintiff go to psychotherapy on

a weekly basis and have an evaluation for medication management.  (*Id.*)

Plaintiff returned to Dr. McCoy on June 27, 2019 when the Plaintiff discussed her

difficulty sleeping because of her childhood trauma, her relationship with her son, and other

past relationships.  (*Id.* at 324.)  Plaintiff stated that she has had bulimia for the previous 21

years and makes herself throw up on a daily basis.  On July 9, 2019, Plaintiff returned to Dr.

McCoy and discussed her conflicts with her son and feeling overwhelmed.  (*Id.* at 328.)  She

denied alcohol use since the previous session.  Dr. McCoy described her as calm, well related,

but slightly guarded.  (*Id.*)  Dr. McCoy also found there was some but minimal progress toward

treatment goals and that Plaintiff appeared superficially receptive but that she was focused on

changes in the behavior of people around her as opposed to her own behavior.  (*Id.*)

Plaintiff saw Dr. Bass on July 10, 2019 for medication management.  (*Id.* at 303.)

Plaintiff described a history of being subject to child abuse and domestic violence and turning

to alcohol abuse as a result.  (*Id.*)  Dr. Bass diagnosed Plaintiff with depression, anxiety, PTSD,

and eating disorder and prescribed Prozac and Trazodone.  (*Id.* at 305.)  On July 25, 2019,

Plaintiff saw Dr. McCoy and discussed her complex feelings after the recent death of her father.

(*Id.* at 336.)  She reported that she had multiple drinks on several occasions a week and a few

beers the previous day.  Dr. McCoy's mental status exam indicated that Plaintiff was in a sad

and anxious mood.  (*Id.* at 339.)  Plaintiff returned to Dr. McCoy on August 6, 2019 when she

reported that she had not been drinking and discussed her feelings of being overwhelmed.  (*Id.*

at 341.)  She also informed Dr. McCoy that the Trazodone was making her drowsy in the

morning.  (*Id.*)  On August 12, 2019, Plaintiff returned to Dr. McCoy and reported that she was

drinking roughly the same amount and as often from when she started treatment and

discussed some issues with her son that she was working through.  (*Id.* at 346.)  On August 14,

2019, she returned to Dr. Bass.  Dr. Bass observed that Plaintiff was well groomed and

appeared calmer than their previous interaction, but that Plaintiff was worried, sad, and

struggling with her relationships with her two sons.  (A.R. 307.)  Plaintiff also described a desire

to drink less but admitted that she continued to binge drink.  Dr. Bass said that Plaintiff was

"low risk" at the time and continued Plaintiff's medication but raised her dose of Prozac.  (*Id.* at

311.) Plaintiff also agreed to take Naltrexone (generally used to manage alcohol or opioid use).

(*Id.*)

On August 29, 2019, Plaintiff returned to Dr. McCoy and said that she "blacked out" and

woke up with bruises the last time she drank alcohol.  (*Id*. at 357.)  She also informed Dr. McCoy

that she began taking Naltrexone and is hopeful that it will help with her alcohol abuse.  (*Id.*)

Dr. McCoy observed that Plaintiff was calm, well related, open, and demonstrated good insight.

On September 5, 2019, Plaintiff returned to Dr. McCoy and reported feeling slightly better than

the previous visit and was getting good sleep.  (*Id.* at 362.)  On September 19, 2019, Plaintiff

saw Dr. McCoy and described her nightmares and trouble in her relationships with others.  (*Id.*

at 367.)  Dr. McCoy saw "minimal progress" toward treatment plan goals, but the mental status

exam was similar to other visits.  (*Id.*)  On October 3, 2019, Plaintiff saw Dr. McCoy and

discussed her continuing intrusive thoughts about childhood sexual abuse and its impact on her romantic relationships and drinking.  (*Id.* at 450.)  Dr. McCoy described Plaintiff as calm and insightful and that she tolerated sharing some of the details of childhood trauma, but her mental status exam showed that Plaintiff was anxious, sad, and had a constricted affect.  (*Id.* at 450, 453.)  Plaintiff saw Dr. McCoy again on October 17, 2019, October 24, 2019, and November 12, 2019 and reported similar issues and concerns as in past visits.  (*Id.* at 457-77.) Dr. McCoy had similar observations throughout these visits.

On November 27, 2019, Plaintiff returned to Dr. Bass for medication management.  (*Id.* at. 489.)  Plaintiff reported feeling calmer since taking the Prozac though she still has mood lability and episodic anxiety.  She also informed Dr. Bass that she was still binge drinking but taking oral Naltrexone to try to stop drinking alcohol.  Dr. Bass increased Plaintiff's Prozac dosage.  (*Id.* at 497.)  Dr. Bass prescribed Vivitrol (injectable version of Naltrexone to treat alcohol dependence).

On January 2, 2020, Plaintiff saw Dr. McCoy and informed her she was having difficulty stopping her alcohol abuse and was feeling calmer with medication.  (*Id.* at 507.)  Plaintiff also had "moderate progress" in her treatment goals but needed to reschedule her Vivitrol injection because she missed her last appointment.  (*Id.*)  On January 9, 2020, Plaintiff returned to Dr. McCoy and stated she was not drinking daily and was focused on applying for benefits.  (*Id.* at 517.)  However, she stated she was struggling to disengage from some relationships that violated her boundaries and that she had experimented with not taking medication for a day but felt agitated, more anxious, and irritable.  On January 30, 2020, Plaintiff returned to Dr. McCoy and discussed similar relationship problems as in the past.  (*Id.* at 527.)  Plaintiff also

stated she had not received her Vivitrol injection yet.  On February 13, 2020, Plaintiff saw Dr. McCoy and stated that she fell while drinking but did not remember the incident and felt this was partly due to her medication.  (*Id.* at 536.)  Plaintiff stated she had not had the Vivitrol shot and that she had some ambivalence toward getting it.  (*Id.*)

Plaintiff returned to Dr. Bass on February 20, 2020 and reported similar symptoms.  (*Id.* at 545.)  Dr. Bass recommended tapering Plaintiff off Prozac and starting Zoloft (generally prescribed to treat depression, OCD, panic attacks, and anxiety) instead.  (*Id.* at 553.)  On March 12, 2020, Plaintiff returned to Dr. McCoy and reported anxiety due to COVID-19 and continued drinking.  (*Id.* at 563.)

On March 19, 2020, Plaintiff began seeing a new psychiatrist, Dr. Knafel.  (*Id*. at 573.)  Plaintiff stated she had an "up and down" mood, that the medication worked sometimes, and has been sleeping well on Trazodone.  She also stated she was still binge drinking and had not taken the Vivitrol injection but wants to continue oral Naltrexone.  (*Id.* at 573.)  Plaintiff denied having suicidal thoughts but said that she had "tried something 7 years ago" though she did not provide additional details.  (*Id.*)  Dr. Knafel refilled her medications.  (*Id.* at 583.)  On March 26, 2020, Plaintiff returned to Dr. McCoy and reported not drinking and feeling calmer.  (*Id.* at 585.)  On April 23, 2020, Plaintiff saw Dr. McCoy over the phone and said she was feeling distressed about COVID-19 and precautions.  (*Id.* at 595.)  Dr. McCoy's mental status exams were similar to past ones.  On April 24, 2020, Plaintiff returned to Dr. Knafel and described feeling "aggravated, frustrated, [and] depressed" because of the pandemic and family issues.  (*Id.* at 605.)  Plaintiff informed Dr. Knafel that she was taking her medications except the Naltrexone

which was making her nauseous and increased her appetite, but Plaintiff planned to start Vivitrol.  (*Id.* at 607.)  Dr. Knafel decreased her Trazodone dose.  (*Id.* at 615.)

On May 7, 2020 and May 21, 2020, Plaintiff returned to Dr. McCoy and reported similar symptoms as the last visit.  (*Id.* at 617, 640.)  On May 28, 2020, Plaintiff reported to Dr. Knafel that she was feeling stressed and busy from applying and appealing for SSI and ongoing conflict with her son.  (*Id.* at 650.)  From July 6, 2020 to September 11, 2020, Plaintiff continued to see Dr. McCoy and discussed similar issues, including various stressors like her SSI application, family issues, and problems with drinking.  (*Id.* at 662, 699, 711, 718.)  On July 7, 2020, Plaintiff saw Dr. Knafel and reported feeling depressed and discussed difficulties in her strained relationship with her son.  (*Id.* at 674.)  Dr. Knafel increased Plaintiff's Zoloft dosage.  (*Id.* at 682-84.)

On August 7, 2020, the Plaintiff saw Dr. Knafel and reported that her depression was getting worse, that she had not been compliant with her Zoloft prescription, but that she started Vivitrol on May 20, 2020 and tolerated it well.  (*Id.* at 702.)  On September 11, 2020, Plaintiff returned to Dr. Knafel and reported that she felt anxious and experienced dizziness, sweating, and shaking when she goes outside or is in a crowded place.  (*Id.* at 718.)  She admitted being non-compliant with medication but that she feels the medication she takes is working.  On November 5, 2020, Plaintiff returned to Dr. McCoy and stated she believed the medication was helping her stabilize.  (*Id.* at 731.)  However, Plaintiff said she still purges several times a week and drank one to two times a week with three to four bottles in one sitting but that she will be getting another Vivitrol injection the next week.

On November 13, 2020, Plaintiff was scheduled for a follow up telephonic appointment with Dr. Knafel, but Plaintiff did not join the call.  (A.R. 737.)  Plaintiff was also scheduled for an appointment for the Vivitrol shot on the same day but did not attend.  (A.R. 738.)  On December 4, 2020, Plaintiff saw Dr. McCoy and reported that she had concerns about her son as he was diagnosed with a psychotic illness and wants to be in the marines.  Plaintiff reported experiencing inconsistent sleep and purging every day.  (*Id.* at 739.)  On December 11, 2020, Plaintiff received her Vivitrol injections.  (*Id.* at 749-50.)  On December 16, 2020, Plaintiff was scheduled for an appointment with Dr. Knafel but did not attend the appointment and did not answer calls from support staff asking her to reschedule.  (*Id.* at 751.)  On December 18, 2020, Plaintiff saw Dr. McCoy and continued to report anxiety, purging, and drinking though she was attempting to limit drinking to the weekends.  (*Id.* at 752.)  She stated that she was not comfortable speaking by phone and had been unable to access the video platform.  (*Id.*)  Plaintiff agreed with Dr. McCoy to go to an isolation room in the clinic to use video technology.  However, Dr. McCoy stated she appeared engaged and well related.  On January 4, 2021, Plaintiff attended a telephonic appointment with Dr. Knafel and informed Dr. Knafel that she was feeling ok but anxious when she was outside or in a crowded place and that she was experiencing worsening depression.  (*Id.* at 758.)  She stated that her son is better but not taking medication and is concerned because he wants to go to the military.  She also reported that she was compliant with her medication with no adverse effects and was cutting down on alcohol consumption but was still drinking.  (*Id.* at 759.)

b.  <u>Dr. Knafel – Medical Source Statement</u>

On February 4, 2021, Dr. Knafel completed a "Medical Source Statement About What the Claimant Can Still Do Despite Mental Impairment(s)".  (*Id*. at 771-74.)  Dr. Knafel identified Plaintiff's symptoms as sleep disturbance, mood disturbance, emotional lability, substance dependence, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, intrusive recollections of a traumatic experience, and generalized persistent anxiety.  (*Id.* at 771.)  Dr. Knafel stated that Plaintiff reported frequent panic attacks, anxiety, a depressed and labile mood, emotional dysregulation, intrusive memories of trauma, interpersonal conflicts, and flashbacks.  (*Id.* at 772.)

Dr. Knafel opined that Plaintiff had a "moderate loss" in her ability to maintain regular attendance and be punctual and an "extreme loss" in her ability to use public transportation and be in crowded surroundings.  (*Id.* at 773.)  Dr. Knafel also reported that Plaintiff's impairments or treatment would cause her to miss work more than 3 times a month.  (*Id.* at 772.)  Dr. Knafel also opined that Plaintiff needed a vocational assessment.  (*Id.*)

c.  <u>Jonathan Fiskus, Psy.D. – SSA Consultative Examining Psychologist</u>

On October 2, 2019, Dr. Jonathan Fiskus, SSA Consultative Examining Psychologist evaluated Plaintiff at the behest of the SSA.  (*Id.* at 375.)  Plaintiff reported that she completed school through tenth grade until she became pregnant, is not currently employed, and has not worked since 1998 at a custom jewelry place.  (*Id.*)  Plaintiff reported that she was in special education because of a learning disability when she was in school.  She reported she was hospitalized but not admitted on April 19, 2019 at Jacobi Hospital because of an anxiety attack

and is currently receiving treatment at Montefiore Behavioral Health Clinic for anxiety, depression, and an eating disorder.  (*Id.*)  She reported she has difficulty falling asleep and frequently wakes up and is unable to fall asleep again, eats and then purges, has depressive symptoms of crying spells and hopelessness, denies current suicidal or homicidal ideation, and has palpitations and chest pains.  (*Id.* at 376.)  She also reported drinking seven bottles of wine every other day and a family history of mental illness.

Dr. Fiskus' mental status examination stated Plaintiff was cooperative; had adequate manner of relating, social skills, and overall presentation; appropriate dress, grooming, and posture; had adequate and expressive language; had coherent and goal directed thoughts; had full range affect and appropriate speech and thought content; was orientated to person, place, and time; had mildly impaired attention and concentration because of limited intellectual functioning; was not able to do serial 7s or 3s; had impaired recent and remote memory skills; had borderline and generally limited fund of information; and had fair insight and poor judgment.  (*Id.* at 377-78.)  Plaintiff reported that she is able to dress, bathe and groom herself, and is able to cook food, take public transportation, manage money, and clean.  (*Id.* at 378.)  She reported she does not socialize, has some family relationships, and spends her days watching movies and attending appointments and caring for her son.  (*Id.*)

Dr. Fiskus diagnosed Plaintiff with Bipolar 2 disorder, PTSD, Bulimia nervosa, and alcohol use disorder.  (*Id.* at 379.)  Dr. Fiskus opined that Plaintiff was "moderately limited" in her ability to understand, remember, or apply complex directions and instructions; her ability to use reason and judgment to make work-related decisions; her ability to interact adequately with supervisors, coworkers, and the public; and her ability to regulate emotions, control

behavior, and maintain well-being.  (*Id.* at 378.)  Dr. Fiskus also opined that Plaintiff was "mildly

limited" in her abilities to understand, remember, or apply simple directions and instructions;

to sustain concentration and perform a task at a consistent pace; to sustain an ordinary routine

and regular attendance at work; and to maintain personal hygiene and appropriate attire.  Dr.

Fiskus opined she had no limitations in her ability to have awareness of normal hazards and

take appropriate precautions.  (*Id.*)  Dr. Fiskus stated that the results of the exam were

consistent with psychiatric and substance abuse problems but that Plaintiff's impairment "does

not appear to be significant enough to interfere with the claimant's ability to function on a daily

basis."  (*Id.*)  His prognosis was "guarded, given her current substance use" and he opined that

she would not be able to manage her own funds because of concerns that she will spend that

money on alcohol.  (*Id.* at 379.)

### d.  State Agency Medical Consultants

Two state agency consultants reviewed Plaintiff's file to provide an opinion on her

abilities. On November 8, 2019, L. Blackwell, Ph.D. reviewed the Plaintiff's file and opined that

Plaintiff was "moderately limited" in her abilities to understand and remember detailed

instructions; to carry out detailed instructions; to perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances; to complete a normal

workday and workweek without interruptions and at a consistent pace; to interact

appropriately with the general public; to accept instructions and respond appropriately to

criticism from supervisors; to respond appropriately to changes in the work setting; and to set

realistic goals or make plans independently of others.  (*Id*. at 52-53.)  Dr. Blackwell also

discussed that Plaintiff reported symptoms including hearing voices and hallucinating, has

11

mood fluctuations including a manic state, and "has flights of ideas", but found that these symptoms were inconsistent with the record.  He also opined that Plaintiff retains the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.  (*Id.* at 53.)  Dr. Blackwell stated that Plaintiff was not disabled.

On April 27, 2020, M. D'Ortono, Psy.D. reviewed Plaintiff's file.  (A.R. 62-67.)  Dr. D'Ortono reached the same conclusions as Dr. Blackwell, including finding the same moderate limitations.  (*Id.*)

### 2.  Plaintiff's Function Report

On September 16, 2019, Plaintiff stated in a function report that she lives in an apartment with family and that on a typical day, she cleans, takes her medication, and makes sure that her son is in school.  (*Id.* at 195.)  She reported that she has trouble going outside and being around people without being afraid, paranoid, or getting an anxiety attack.  (*Id.* at 196.)  She stated that she cannot eat normally without throwing up her food, will wake up crying, and can only sleep two to three hours without her medication. Plaintiff stated she has no problem with personal care, prepares meals daily, does not require special help or reminders to take care of personal needs and grooming, and does not need reminders about taking her medication.  (*Id.* at 197.)  She also stated that she goes outside when she has a medical appointment and church, uses public transportation to travel when she goes out, and sometimes can go alone.  (*Id.* at 198.)  Plaintiff reported that she sometimes does her own shopping in stores.  She stated that her hobbies include watching television and trying to read. (*Id.* at 199.)  She stated that she leaves twice a week for appointments and once a week for

church.  (*Id.*)  Plaintiff reported that people make her nervous when they talk loudly or move

too much, and she generally wants to be alone.  (*Id.* at 200.)  She stated that she experiences

anxiety attacks weekly triggered by memories or family stress.  In response, she reported she

takes her medication and sleeps it off.  (*Id.* at 203.)

    **3.  Hearing before the Administrative Law Judge ("ALJ")**

    After Defendant denied Plaintiff's applications for benefits, Plaintiff requested a hearing

before an ALJ.  (*Id.* at 88.)  On March 9, 2021, Plaintiff, along with her attorney, appeared for a

hearing via telephone before ALJ Banks.  (*Id*. at 30.)

    At the hearing, Plaintiff's attorney asked her a series of questions.  In response, Plaintiff

testified that she panics and feels her heart race when she is outside and in large crowds, gets

nervous often, and feels paranoid.  (*Id*. at 34-35.)  She stated that she experiences deep

depression and anxiety and does not socialize or visit anybody.  She also testified that when

people try to visit her, she shuts down.  Plaintiff stated that she requires some assistance from

her son and mother with cooking, shopping, cleaning, and laundry.  (A.R. 35.)  She also testified

that she was previously treated for issues with alcohol but has improved since receiving

injections every 30 days.  (*Id*. at 35-36.)  Plaintiff discussed her difficulties concentrating and

that she gets distracted or forgetful.  (*Id*. at 36.)  Plaintiff testified that she has difficulty getting

out of the house, has missed appointments out of anxiety, and panics when on a bus as

opposed to a cab. (*Id*. at 37.)  She testified that she will try to force herself to take a bus but

that she will "mostly [] take a cab".  (*Id.*)  In response to the ALJ's questions, she stated that

there are days where she can force herself to cook and manage her own finances but there are

other days where she cannot.  (*Id*. at 39.)  Plaintiff testified that she lives with her mother.

A vocational expert ("VE") also testified at the hearing.  (*Id*. at 39-42.)  The VE was presented with a hypothetical individual of Plaintiff's age, education, and work history who has no exertional limitations but some non-exertional limitations who can perform simple, routine tasks in a low-stress environment that involves occasional decision-making, occasional judgment required, occasional changes in the work setting; goal oriented but no production pace or assembly line; and no more than occasional contact with co-workers, supervisors, and the public.  (*Id*. at 40.)  The VE testified that such an individual could work as a router, kitchen helper, and cleaner or housekeeper.  (*Id*. at 40-41.)  However, the VE testified that if such an individual were off task more than 10 percent of the day, the individual would not maintain any job.  (*Id*. at 41.)  The VE also testified that if such an individual missed work more than once a month or was late to work by 30 minutes more than once a month, she could not maintain any work.  (*Id*. at 41-42.)

### 4.  The ALJ's Decision

On March 31, 2021, ALJ Banks issued a decision finding Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act and was not entitled to SSI.  (A.R. 15.)  The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the application date of August 9, 2019.  (*Id.* at 17.)

The ALJ found that Plaintiff had severe impairments of major depressive disorder, general anxiety disorder, and PTSD that significantly limit the ability to perform basic work activities.  (*Id.*)  The ALJ determined these impairments do not meet or medically equal the severity of one of the listed impairments in Appendix 1 of the regulations.  In making this determination, the ALJ found that Plaintiff had only "mild" or "moderate" limitations in broad

areas of functioning rather than "marked" or "extreme" limitations, and therefore did not meet

the requirements of Paragraph B.  The ALJ also found Plaintiff had not demonstrated any

evidence of medical treatment or a highly structured setting that is ongoing, so she did not

meet the requirements of Paragraph C.  (*Id*. at 19.)

ALJ Banks further found that Plaintiff retained the residual functional capacity ("RFC")[1]

to "perform simple, routine tasks, and repetitive tasks"; perform work in a low stress job with

occasional decision-making required, occasional judgment required, and occasional changes in

the work setting; can perform goal-oriented work but not at production pace rate; and can

tolerate occasional contact with co-workers, supervisors, and the public.  (*Id.*)  The ALJ stated

that she reached this determination after careful consideration of Plaintiff's symptoms and

consistency with the objective medical evidence and record.  (A.R. 20.)  ALJ Banks found that

while Plaintiff had medically determinable impairments that could reasonably be expected to

cause the alleged symptoms, Plaintiff's descriptions of the intensity of her alleged symptoms

were not consistent with the evidence in the record and that Plaintiff is able to engage in a

somewhat normal level of daily activity and interaction.  (*Id.*)

ALJ Banks considered the medical treatment notes from Montefiore, which she

determined showed mental status examination results within normal limits.  The ALJ also

considered the medical opinion of consultative psychiatrist Dr. Jonathan Fiskus, and two agency

reviewers Dr. L. Blackwell and Dr. M. D'Ortona, which the ALJ found persuasive and all stated

the Plaintiff had mild to moderate limitations.  (*Id*. at 21.)  ALJ Banks also considered the

---

[1]  The RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted).

opinion of Plaintiff's treating physician Dr. Natalya Knafel, which stated Plaintiff would be absent from work more than three times a month, had a moderate loss in maintaining regular attendance, and an extreme loss in using public transportation or being in crowded settings. (*Id.*)  The ALJ found Dr. Knafel's opinion unpersuasive because it was not supported by Dr. Knafel's own treatment notes and observations and the opinion or treatment notes of other examiners.  (*Id.*)

ALJ Banks found there was no past relevant work but relied on testimony from the VE to conclude that the Plaintiff could perform work as a router, kitchen helper, cleaner, or housekeeper.  (A.R. 22-23.)

### 5. Appeal of the ALJ's Decision and Initiation of the Instant Action

On April 21, 2021, Plaintiff requested the Appeals Council review the ALJ's decision. (A.R. 159-162.)  The Appeals Council denied the request on October 14, 2021. (*Id.* at 1-6.)  This was the final act of the Commissioner.  Plaintiff commenced this action on December 13, 2021, asserting that ALJ Banks failed to properly evaluate the medical opinion evidence in determining Plaintiff's RFC and failed to properly evaluate Plaintiff's subjective allegations.

### LEGAL STANDARDS

A court reviewing a final decision by the Commissioner must, as a threshold matter, determine whether the ALJ provided the plaintiff with a full and fair hearing under the Secretary's regulations and fully and completely developed the administrative record.  *Intonato v. Colvin*, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (citation omitted).  The duty to develop the record requires the ALJ "to ensure that the record contains sufficient evidence to make a determination."  *Bussi v. Barnhart*, 2003 WL 21283448, at *8 (S.D.N.Y. June 3, 2003).

The ALJ must obtain additional information "when the evidence as a whole is not complete enough for the ALJ to make a determination." *Id.* (citation omitted).  An ALJ's failure to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding the case.  *Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009).

Once the Court is satisfied that the plaintiff was afforded a full hearing and the record is fully developed, the Court then assesses the Commissioner's conclusions.  In doing so, the Court is limited to determining whether the Commissioner's conclusions (1) "were supported by substantial evidence in the record," and (2) "were based on a correct legal standard."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. §§ 423(d)(5)(B).  The ALJ's decision must set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  *Id*. § 405(b)(1).  It must do so "with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."  *Herrera v. Comm'r of Soc. Sec.*, 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

That said, the ALJ need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), or "reconcile explicitly every conflicting shred of

medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).  If the ALJ fails to consider evidence in the record, the Court must be "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."  *Mongeur*, 722 F.2d at 1040 (citation omitted).  If the Commissioner's findings are supported by substantial evidence, those findings are conclusive.  42 U.S.C. § 405(g); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

As to the correct legal standard, the Commissioner is required to conduct a sequential five-step inquiry whereby the Commissioner determines: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) if not, whether the claimant has a "severe impairment" that limits their ability to do basic work activities; (3) if so, whether the impairment is listed in Appendix 1 of the regulations, and what the claimant's RFC is; (4) if the impairment does not qualify as a listed impairment, whether the claimant possesses the RFC to perform their past work; and (5) if the claimant is not capable of performing past work, whether they are capable of performing other work that exists in the national economy. *Vellone v. Saul*, 2021 WL 319354, at *5 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The claimant bears the burden of proof at the first four steps of the analysis, and at the last step, the Commissioner has the burden of showing there is other work the claimant could perform.  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

When considering medical opinions, the Commissioner must consider: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The supportability and consistency

factors are the "most important," and ALJs must explain how they considered those factors for medical opinions. *Id*. §§ 416.920a, 416.920c(b)(2). The supportability inquiry focuses on how well a medical source supported and explained their opinion. *Vellone,* 2021 WL 319354, at *6. The question of consistency concerns whether the opinion is consistent with other evidence in the medical record. *Id.* The Commissioner is tasked with analyzing medical opinions at the source-level, meaning the Commissioner need not discuss each medical opinion in the record, and may apply the five factors holistically to a single medical source. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Regarding claims filed on or after March 27, 2017, in evaluating the medical evidence, the Commissioner need not assign particular evidentiary weight to treating physicians as was previously required by the Act. *Vellone*, 2021 WL 319354, at *6. However, the regulations continue to recognize the "foundational nature" of the observations of treating sources. *Steven M.W. v. Comm'r of Soc. Sec.*, 2022 WL 2669491, at *6 (S.D.N.Y. June 17, 2022), *report and recommendation adopted sub nom*., *Washburn v. Comm'r of Soc. Sec.*, 2022 WL 2669296 (S.D.N.Y. July 11, 2022).

## DISCUSSION

As an initial matter, the Court finds that ALJ Banks provided Plaintiff with a full and fair hearing under the Secretary's regulations and properly developed the administrative record. Accordingly, the Court turns to Plaintiff's contentions that ALJ Banks failed to properly evaluate the medical opinion evidence and Plaintiff's subjective statements.

### 1. *Whether the ALJ Erred in Weighing the Medical Opinion Evidence*

Plaintiff asserts that ALJ Banks' evaluation of the medical opinion evidence was flawed, particularly in finding Plaintiff's treating psychiatrist Dr. Knafel's opinion unpersuasive. Plaintiff

argues the ALJ failed to provide sufficient explanation for this finding and then improperly gave more weight to non-examining doctors and a one-time consultative examiner who did not have Plaintiff's treatment records. As a result, Plaintiff contends that the RFC is faulty and failed to accommodate opinions of the non-examining psychologist that Plaintiff has moderate limitations in regulating emotions, controlling behavior, sustaining an ordinary routine and maintaining regular attendance. This was not harmless, according to Plaintiff, because the VE testified that if an individual was off-task more than ten percent of the workday or missed work more than once a month she could not work.

As noted above, in evaluating the medical evidence, the Commissioner need not assign particular evidentiary weight to treating physicians, although the long-term nature of a treating physician's relationship with the patient is clearly relevant and must be considered when weighing the opinions and determining an RFC. *Vellone*, 2021 WL 319354, at *6. Here, the ALJ stated that she found Dr. Knafel's opinion unpersuasive because it was not supported by Dr. Knafel's treatment notes, not consistent with the consultative examiner opinions or the overall treatment notes. It is clear that the ALJ reviewed the entirety of the medical record when weighing the medical evidence.

Regarding Dr. Knafel's opinion that Plaintiff had an extreme loss in using public transportation, the ALJ cited the Plaintiff's ability to use public transportation. (*Id.* at 549-51.) Plaintiff herself stated in her function report that she uses public transportation when she leaves the house and leaves the house for medical appointments. (*Id.* at 198, 752.) The ALJ also indicated that Dr. Knafel's treatment notes described Plaintiff as stable and able to use

public transportation.  This evidence is inconsistent with an extreme limitation in using public

transportation.  (*Id.* at 20-21, 549-51.)

Regarding Dr. Knafel's opinion that Plaintiff would be absent from work more than three

times per month and had a moderate loss in maintaining regular attendance, ALJ Banks

explained that she did not find the opinion persuasive because it was not supported by the

treatment record and was inconsistent with the other opinions in the record.  (A.R. 21.)

Plaintiff's medical record demonstrates almost two years of regular attendance at medical

appointments without issue.  While the record also indicates that she missed two

appointments with Dr. Knafel over the phone and one appointment for her Vivitrol medication,

she was regularly attending appointments with Dr. McCoy in the same time period without

issue and informed Dr. McCoy that she did not feel comfortable having appointments on the

phone and was having trouble with video conferencing technology (indicating a reason for

missing the appointment other than her mental ability to make scheduled appointments).  The

ALJ recognized that Dr. Knafel's treatment notes consistently described Plaintiff as stable with

largely normal or mild finding, including logical and goal directed thought processes, intact

cognition and memory, intact concentration, and fair insight and judgment was inconsistent

with high absenteeism in discounting the opinion noting limitations more serious than these

findings would warrant.  *See Moore v. Comm'r of Soc. Sec'y*, 19-cv-1850, 2020 WL 5077347

(S.D.N.Y. Aug. 27, 2020) (ALJ did not err in according less weight to treating psychiatrist's

opinion where the ALJ explained the opinion was inconsistent with doctor's own treatment

notes reflecting mostly normal examinations and effective management of symptoms from

anxiety and PTSD); *Brush v. Berryhill*, 294 F. Supp. 3d 241 (S.D.N.Y. 2018) (ALJ appropriately

found that evidence in the record contradicted psychologist's opinion that the claimant would be absent from work two to four times a month, including findings that claimant had intact concentration); *Thomas v. Comm'r of Soc. Sec. Admin.*, 2020 WL 4757059 (S.D.N.Y. Aug. 18, 2020) (ALJ appropriately viewed the doctor's treatment record as not supporting his opinion that the plaintiff would be absent from work more than three times per month).

The ALJ discussed Plaintiff's purported limitations for regular attendance and taking public transportation in the earlier part of the opinion rather than in the section concerning the RFC, it is nevertheless clear that the ALJ considered the entirety of the record when arriving at an RFC and did not need to repeat information in depth later in the opinion when arriving at an RFC. *Mongeur*, 722 F.2d at 1040 (citation omitted) (finding no legal error if the ALJ's reasoning can be discerned from other portions of the ALJ's decision); *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (finding an ALJ does not have to state every reason on the record justifying a decision or discuss every piece of evidence submitted).  The ALJ's opinion was sufficient to allow this reviewer to understand the ALJ's reasoning as to the supportability and consistency of the medical opinion.

Plaintiff contends that the ALJ "failed to consider the treating relationship" Plaintiff had with Dr. Knafel when evaluating the opinion and that she too heavily relied on the opinions of the non-treating agency consultants.  However, ALJ Banks acknowledged that Dr. Knafel was the treating physician and referenced Dr. Knafel's treatment notes throughout her opinion, indicating she did not ignore Dr. Knafel.  And, because the treating physician rule no longer applies, the ALJ was not required to assign particular evidentiary weight to Dr. Knafel's opinion. The ALJ also explained her disagreement with Dr. Knafel's opinion, stating that the opinion was

not supported by the other opinions and the treatment notes, including Dr. Knafel's own

normal mental status examinations.

Further, Dr. Knafel's opinions were on a partially completed check-marked worksheet

with almost no explanation, and the explanation that was given were Plaintiffs' own

statements.  (A.R. 771-74.)  Dr. Knafel noted she was unable to attest to whether the Plaintiff

could manage benefits in her own interest and that Plaintiff needed a vocational assessment.

While check-box form medical opinions are not discounted simply because of their form, an

opinion that is not particularly informative, like Dr. Knafel's, should not be considered

controlling.  *See Schillo v. Kijakazi*, 31 F.4th 64, 77 (2d Cir. 2022) (finding the ALJ did not err by

not affording controlling weight to a treating physician's check-box form medical opinion where

the opinion was not particularly informative with little explanation).

The ALJ also explained that Dr. Knafel's opinions were inconsistent with the reports of

the state agency medical consultants, both examining and non-examining, which she found

were more consistent with each other and the overall treatment records, including those of Dr.

Knafel.  Although Plaintiff faults the ALJ for relying on these non-treating doctors, the ALJ was

entitled to do so when formulating an RFC when, as here, they were largely consistent with and

supported by the record as a whole.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d

Cir. 2012) (finding that reports of a state agency psychiatrist can be given weight and is

appropriate to rely on where the opinion is supported by the medical evidence in the record);

*see also Cepeda v. Comm'r of Soc. Sec.*, 2020 WL 6895256, at 12* (S.D.N.Y. Nov. 24, 2020)

(finding the RFC was supported by substantial evidence where the ALJ considered testimony,

treatment history, symptomology, and activities of daily living, as well as the agency consultant's opinion).

While it is true that Dr. Fiskus did not have Plaintiff's treatment records when rendering an opinion, that alone does not mean that the ALJ could not rely in part on Dr. Fiskus' opinion, which was informed by an examination. *See Tipograph v. Comm'r of Soc. Sec.*, 2022 WL 6564030, at *15 (S.D.N.Y. July 29, 2022), *report and recommendation adopted*, 2022 WL 4547407 (S.D.N.Y. Sept. 29, 2022) (finding that the ALJ appropriately considered a non-treating psychologist's medical opinion where the consultant examined the Plaintiff and observed psychological problems and substance abuse but only moderate limitations even where the consultant did not review medical records); *Marquez v. Colvin, 2013 WL 5568718*, at *13 (S.D.N.Y. Oct. 9, 2013) (finding there was no requirement that a consultative physician's opinion be disregarded because of a lack of review of prior records).  Additionally, the two non-examining doctors, who issued opinions in 2019 and 2020 upon review of records, had similar conclusions to those of Dr. Fiskus.  Their opinions bolster the ALJ's reliance on the three non-treating doctors as a whole.  In November 2019, Dr. Blackwell opined the Plaintiff had moderate limitations in mental functioning besides mild limitations in understanding, remembering, or applying information; and in April 2020, Dr. D'Ortona found the same limitations when he reviewed the record.  The Court notes that these doctors' opinions are largely consistent with subsequent treatment notes from Plaintiff's treating providers who described Plaintiff as stable with largely normal or mild finding, including logical and goal directed thought processes, intact cognition and memory, intact concentration, and fair insight and judgment.  *Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 4200872, at *18 (S.D.N.Y. Aug. 19,

2021), *report and recommendation adopted Rodriguez v. Comm'r of the Soc. Sec. Admin.*, 2022 WL 874931 (S.D.N.Y. Mar. 24, 2022) (medical opinion not "necessarily stale simply based on its age" and a "dated opinion my constitute substantial evidence if it is consistent with the record as a whole").  Plaintiff does not point to any treatment records that contradict the medical opinions of the non-treating doctors.  *Camille v. Colvin*, 104 F. Supp. 3d 329, 344 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (finding the ALJ did not err in relying on consulting examiner opinions that were based on only part of the overall administrative record where the treatment notes and opinions before and after the opinion demonstrated substantially similar limitations and findings).

Finally, the cases Plaintiff cites for the proposition that reliance on opinions from non-examining consultants is not appropriate are distinguishable because they involve an ALJ's reliance on non-examining consultant reports when the record was not adequately developed or the consultants' findings were contradicted by the record where they did not review a report for a physical injury.  See *Smith v. Comm'r of Soc. Sec.*, 2020 WL 7262847, at *17 (E.D.N.Y. Dec. 10, 2020) (finding the ALJ inappropriately relied on consultative examiners where the record was not adequately developed); *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) (finding the ALJ improperly relied on forms filled out by consultants where the consultants did not review an MRI report for a leg and back injury); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding consultant physicians' opinions were unreliable where the opinions relied entirely on the examining consultant's findings or asked for objective evidence when no objective evidence exists for the physical injury).

In sum, the Court finds that the ALJ properly evaluated the medical evidence as a whole and did not err in weighing the opinions of the various treating and non-treating doctors and sufficient explained the reasons for her conclusions about this evidence and how it informed the RFC.

2.   ***Whether the ALJ Erred in Evaluating Plaintiff's Subjective Allegations***

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and finding they were not consistent with the medical evidence in the record.

The ALJ is "not require[d] to accept the claimant's subjective complaints without question." *Genier*, 606 F.3d at 49.  Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.*  This requires a two-step process.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.*  If so, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (quotation marks and citation omitted).  In conducting this evaluation, the ALJ must consider statements the claimant or others make about her impairments, restrictions, daily activities, efforts to work, or any other relevant statements. *Id*. (quoting 20 C.F.R. § 404.1512(b)(3)).

Here, Plaintiff alleged that she had concentration difficulties, auditory and visual hallucinations, and difficulty leaving the house and taking public transportation.  (A.R. 20.) Adhering to the required two-step approach, the ALJ first found that Plaintiff's impairments

could reasonably be expected to produce the symptoms alleged, but at step two when

evaluating the extent to which the symptoms limit Plaintiff's capacity for work, the ALJ found

that Plaintiff's allegations were not consistent with the medical evidence and other evidence on

record as to their severity.  (*Id*. at 20-21.)

This finding is supported by substantial evidence.  In particular, the ALJ found that

Plaintiff's allegations were contradicted by her own testimony that she has been able to engage

in a somewhat normal level of daily activity and interaction and her functional assessment (*Id*.)

The ALJ credited medical treatment notes from June 2019 that show mental status examination

results within normal limits, including goal-directed thought processes and intact cognition, and

the most recent examinations in July 2020 that Plaintiff is not at imminent risk of self-harm, is

seeking help, has insight into the effects of her drinking, denies substance use, and has stable

living conditions.  (*Id*. at 680.)  The ALJ also discussed the medical opinions and the treatment

notes that demonstrated Plaintiff had reduced her drinking to two to three cans of beer twice a

week and was taking medication that she was tolerating well.  (*Id*. at 676.)  Therefore, the ALJ

adequately evaluated Plaintiff's subjective statements and supported her determination

regarding Plaintiff's symptoms and their severity and impact on functioning.  *Stanton v. Astrue*,

370 F. App'x 231, 234 (2d Cir. 2010); *see also Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir.

2015) (ALJ properly considered the plaintiff's statements about her daily activities, including

that she could handle grocery shopping, in determining she was not as limited as she alleged);

*Whipple v. Astrue*, 479 Fed.Appx. 367 (2d Cir. 2012) (finding ALJ's RFC determination for

claimant with mental health impairments was supported by substantial evidence in finding

claimant's reported symptoms were not as limiting as he claimed in light of conflicting evidence

from the medical record and claimant's own description of his daily living activities); *Estevez v. Comm'r of Soc. Sec.*, 2022 WL 4008235, at *17 (S.D.N.Y. Sept. 2, 2022) (ALJ appropriately identified specific record-based reasons to support her conclusion that plaintiff's statements as to the intensity of her symptoms were not consistent with the record); *Eagan v. Comm'r of Soc. Sec.*, 2020 WL 1853465, at *9 (W.D.N.Y. Apr. 13, 2020) (ALJ correctly took into account that mental status exams showed that plaintiff was "emotionally stable" in finding plaintiff was not disabled).

### 3.   *The Finding Is Supported by Substantial Evidence*

The ALJ ultimately found that Plaintiff has the RFC to perform simple, routine tasks, and repetitive tasks; perform work in a low stress job with occasional decision-making required, occasional judgment required, and occasional changes in the work setting; perform goal-oriented work but not at production pace rate; and tolerate occasional contact with co-workers, supervisors, and the public.  It is clear that this opinion is based on the record as a whole because the ALJ's opinion cites the results of almost every relevant mental status exam during the relevant period, which were largely normal and consistent with three of the four medical source opinions.  Although treating examiners found symptoms such as anxious mood, abnormal affect, impaired attention, and impaired concentration, they also indicated that Plaintiff was stable throughout the entire period.   The ALJ also noted that Plaintiff engaged in somewhat normal level of daily activity and interaction, family support and stable living conditions, and that here mental status examinations results for the period June 2019 through January 2021 were largely within normal limits including showing logical and goal-directed thought processes, intact cognition and memory, intact concentration, and fair insight and

28

judgment.   The ALJ noted that Plaintiff was future-oriented and treatment seeking and had

been able to reduce her drinking to 2-3 cans of beer twice a week and was regularly receiving

counseling and medication management.

The ALJ's RFC determination is consistent with the mild to moderate limitations found in

various mental functioning areas by three non-treating doctors and the treatment records of

Plaintiff's treating doctors as well as some of Plaintiff's own self-reports that on a typical day

she cleans, takes her medication, and makes sure that her son is in school, that she has no

problem with personal care, prepares meals daily, does not require special help or reminders to

take care of personal needs and grooming, and does not need reminders about taking her

medication, and that she is able to shop, attend medical appointments and church and

sometimes use public transportation (albeit with some anxiety).  Courts have upheld similar

RFCs in individuals showing similar mental limitations as Plaintiff and affirmed findings that

such individuals are not disabled within the meaning of the Act.  *See Whipple v. Astrue*, 479

Fed. Appx. 367 (2d Cir. 2012)(finding ALJ's RFC determination for claimant with mental health

impairments was supported by substantial evidence and properly applied standard in finding

that claimant's reported symptoms were not as limiting as he claimed in light of conflicting

evidence from treating physicians and other medical professionals and claimant's own

description of his daily living activities); *Knief v. Comm'n of Soc. Sec'y*, 20-cv-6242, 2021 WL

5449728 (S.D.N.Y. Nov. 22, 2021) (finding ALJ properly applied new regulations in finding that

claimant not disabled and could perform simple work activities in low stress environment with

only occasional interaction with other where claimant alleged disabling mental impairments

including depression, anxiety, panic disorder and possible PTSD and exhibited crying spells,

social withdrawal, apprehension around people, difficulty adapting and maintaining composure, and limitations in concentrating, accepting instructions, and interacting with otherss); *Jhon M. v. Kijakazi*, 2022 WL 4462940, at *6 (D. Conn. Sept. 26, 2022) (ALJ did not err in finding plaintiff only had mild limitations in interacting with others where he was cooperative with treatment providers); *Morales v. Berryhill*, 484 F. Supp. 3d 130, 145-46 (S.D.N.Y. 2020) (ALJ did not err in finding no disability despite evidence that plaintiff had memory deficits, below-average cognitive functioning, impaired concentration, irritable mood, and history of trauma); *Collier v. Berryhill*, 18-cv-368, 2020 WL 3638515 (S.D.N.Y. July 6, 2020) (finding ALJ did not err in concluding that claimant could work but limited to low stress work with simple, routine, repetitive tasks involving only occasional interaction with public, coworkers and supervisors and ALJ's finding was supported by substantial evidence including treatment notes where claimant alleged disabling mental impairments, trouble interacting with others, flashbacks and nightmares, inability to leave her home more than once a month and treating doctor found claimant had poor memory, paranoia, difficulty concentrating, decreased energy, and would likely be absent from work three times per week); *Swartz v. Comm'r of Soc. Sec.*, 2015 WL 220983, at *4 (S.D.N.Y. Jan. 13, 2015) (ALJ did not err in finding no disability where Plaintiff exhibited symptoms of anxious mood and affect, disrupted sleep, tearfulness, suicidal thoughts, and forgetfulness); *Merancy v. Astrue*, 2012 WL 3727262, at *5 (D. Conn. May 3, 2012) (ALJ did not err in finding no disability where plaintiff presented with a labile and irritable mood, anxious and blunted affect, and fair insight and judgment).

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for judgment on the pleadings is DENIED

and Defendant's motion for judgment on the pleadings is GRANTED.  The Clerk of the Court is

respectfully directed to enter judgment for the Commissioner and to close this case.

**SO ORDERED.**

Dated: February 1, 2023
      New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge